UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PEDRO ALVAREZ, JR.
       *Plaintiff*

vs.

                                                    C.A. No.: 1:19-cv-00392-WES-PAS

TOWN OF BURRILLVILLE;
COL. STEPHEN C. LYNCH
Of the Burrillville Police
Department
       *Defendants*

## DEFENDANTS TOWN OF BURRILLVILLE AND COL. STEPHEN LYNCH'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I.   PROCEDURAL BACKGROUND

Plaintiff filed his complaint on July 22, 2019 which included eight counts: Count I ("Second Amendment Violation"); Count II ("Procedural Due Process Violation"); Count III ("Substantive Due Process Violation"); Count IV ("Conspiracy to Interfere with Civil Rights"); Count V ("First Amendment Violation"); Count VI ("Takings"); Count VII ("Injunctive Relief").

### II.  FACTUAL BACKGROUND

Plaintiff, Pedro Alvarez Jr. ("Plaintiff"), is a resident of Harrisville, Rhode Island. *Statement of Undisputed Facts at ¶ 1*. In December of 2016, Plaintiff submitted a completed application for his permit to carry a concealed pistol to Colonel Stephen Lynch ("Colonel Lynch"), Chief of Police for the Burrillville Police Department. *Id. at ¶¶ 2-3.* As part of the application process, Colonel Lynch interviewed Plaintiff, in person, at the Burrillville Police Department on or about January 25, 2017. *Id. at ¶ 4.* On or about January 25, 2017, Colonel Lynch granted and issued Plaintiff a permit to carry a concealed pistol. *Id. at ¶ 5.* On May 22, 2018, the Rhode Island State Police concluded a criminal investigation into the criminal

activities of the motorcycle gangs named the "Thug Riders" and "Pagans." *Id. at ¶ 6.* As a result of this investigation, numerous members of these motorcycle gangs were indicted by the State of Rhode Island with numerous criminal offenses. *Id. at ¶ 7.* After the conclusion of this criminal investigation, Colonel Lynch observed, on social media, photos of Plaintiff associating with known members of the "Thug Riders." *Id. at ¶ 8.* On June 8, 2018, Lieutenant Brian Pitts of the Burrillville Police Department met with Plaintiff in order to discuss Plaintiff's affiliation with the "Thug Riders" motorcycle gang. *Id. at ¶ 9.* On June 8, 2018, based upon observing the photos of Plaintiff associating with members of the "Thug Riders" and the meeting between Lieutenant Pitts and Plaintiff, Colonel Lynch determined that Plaintiff lacked the proper suitability to possess a permit to carry a concealed pistol. *Id. at ¶ 10.* On this same day, Colonel Lynch revoked Plaintiff's permit to carry a concealed pistol. *Id. at ¶ 11.* On June 12, 2018, Colonel Lynch sent a letter to Plaintiff notifying him of the revocation and the reasons for the revocation of his permit to carry a concealed pistol. *Id. at ¶ 12.* On June 12, 2018, a meeting between Plaintiff and Colonel Lynch was scheduled for June 13, 2018 at 11:00 am at the Burrillville Police Department. *Id. at ¶ 13.* The purpose of this meeting was to discuss the status of Pedro Alvarez's permit to carry a concealed pistol. *Id. at ¶ 14.* On June 13, 2018 at 9:15 am, Colonel Lynch received a voice message from Plaintiff notifying him that he was cancelling the meeting. *Id. at ¶ 15.* On June 13, 2018, Colonel Lynch received a letter dated June 13, 2018 from Plaintiff's Attorney, Frank Saccoccio, Esq. *Id. at ¶ 16.*

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could

resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). The moving party bears the initial burden of showing the Court that no genuine issue of material fact exists. *Id.* Once the moving party makes this showing, the non-moving party must point to specific facts demonstrating a trialworthy issue. *Id.* The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Insurance Co.*, 924 F.2d 370 (1st Cir. 1995).

## IV.   ARGUMENT

### A.  Count I – The Second Amendment claim

The Second Amendment provides, "[A] well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const., amend. II. Plaintiff claims that his Second Amendment right "to keep and bear arms" was violated when Colonel Lynch revoked Plaintiff's concealed carry permit on June 8, 2018. *Plaintiff's Complaint at ¶ 24.* As support for his claim, Plaintiff relies upon *District of Columbus v. Heller*, 554 U.S. 570 (2008) for the premise that the revocation of a concealed carry permit amounts to a violation of Plaintiff's right to keep and bear arms. *Plaintiff's Complaint at ¶ 22.* However, Plaintiff's reliance on *Heller* for this premise is inaccurate and misplaced.

In *Heller*, the plaintiff challenged a District of Columbia (D.C.) law which generally prohibited the possession of handguns. *Heller*, 554 U.S. at 574. The law made it a crime to carry an unregistered firearm, and the registration of handguns was prohibited. *Id*. at 574-75. The law further mandated that any person who legally possessed a firearm must keep the firearm "unloaded and disassembled or bound by a trigger lock or similar device." *Id*. at 575. The

plaintiff applied for a handgun registration in order to keep a handgun in his home, but D.C. denied the plaintiff's application. *Id*. The plaintiff brought suit to "enjoin the city from enforcing the bar on the registration of handguns, the licensing requirement insofar as it prohibits the carrying of a firearm in the home without a license, and the trigger-lock requirement insofar as it prohibits the use of 'functional firearms within the home.'" *Id*. at 576. The United States (U.S.) Supreme Court held that the D.C. statute banning the possession of handguns in an individual's home violated the Second Amendment. *Id*. at 635. The U.S. Supreme Court further held that the law violated the Second Amendment by requiring a handgun to be inoperable in the home. *Id*.

In affirming the Court of Appeals' judgment, the U.S. Supreme Court reasoned that the operative clause of the Second Amendment conferred an individual right to keep and bear arms and that a categorical ban on handguns within an individual's home violated that right. *Id*. However, the Court further elaborated that this right is not without limitation. *Id*. at 626. The Court cited that a "century of cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes. For example, the majority of the 19th-century courts to consider the question held that *prohibitions on carrying concealed weapons were lawful* under the Second Amendment or state analogues." *Id*. *citing State* v. *Chandler*, 5 La. Ann., at 489-490; *Nunn* v. *State*, 1 Ga., at 251; *see generally* 2 Kent *340, n 2; The American Students' Blackstone 84, n 11 (G. Chase ed. 1884) (emphasis added). The U.S. Supreme Court has more specifically stated that "the right of the people to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons." *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897).

Subsequent to *Heller*, and in reliance on *Heller*, Circuit Courts have addressed the question of whether the carrying of a concealed weapon is protected by the Second Amendment.

*See Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) *and Peruta v. Cnty. of San Diego*, 824 F. 3d 919 (9th Cir. 2016). These Courts have held that the carrying of a concealed weapon is not a right that triggers Second Amendment protections. *Peterson*, 707 F.3d at 1201 ("the carrying of concealed firearms is not protected by the Second Amendment or the Privileges and Immunities Clause. . . In light of our nation's extensive practice of restricting citizens' freedom to carry firearms in a concealed manner, we hold that this activity does not fall within the scope of the Second Amendment's protections"); *Peruta*, 824 F. 3d at 927 ("the protection of the Second Amendment — whatever the scope of that protection may be — simply does not extend to the carrying of concealed firearms in public by members of the general public.")

Moreover, the First Circuit has held that allowing licensing authorities to determine the "unsuitability" of an individual in granting or revoking a concealed carry permit does not trigger Second Amendment protections. *Hightower v. City of Boston*, 693 F.3d 61, 76 (1st Cir. 2012). In *Hightower*, the plaintiff was a former police officer who possessed a concealed carry permit. *Id*. at 65. After the plaintiff's resignation from the police department, her concealed carry license was revoked because the police department determined she inaccurately answered a question on her concealed carry license renewal form. *Id*. Plaintiff brought suit against the City claiming that the revocation of her license violated her Second Amendment rights. *Id*. The First Circuit noted that under Massachusetts's statute related to the revocation of concealed carry permits, it stated "[a] license may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license." *Id*. at 67. The ability for a licensing authority to determine the unsuitability of a particular individual does not violate Second Amendment rights where a licensing authority revoked a concealed carry license on the grounds that an individual was deemed unsuitable for such a license. *Id*.

Here, neither the Town of Burrillville nor Colonel Lynch are prohibiting Plaintiff from possessing a handgun or firearm of any kind. The Defendants have not seized Plaintiff's firearm or prevented him from purchasing or owning a firearm. The only action that has been taken is the revocation of Plaintiff's previously-granted concealed-carry permit, an action that Colonel Lynch has the statutory authority to carry out. R.I. Gen. Laws § 11-47-13. Similar to the Massachusetts statute in *Hightower*, R.I. Gen Laws § 11-47-11 grants the authority in local Chiefs of Police to "issue a license or permit to the person to carry concealed upon his or her person a pistol or revolver . . . if . . . it appears that the applicant . . . is a suitable person to be licensed." R.I. Gen Laws § 11-47-11(a). Additionally, under R.I. Gen. Laws § 11-47-13, "[a]ny license or permit may be revoked for just cause at any time by the authority granting it. . ." R.I. Gen Laws § 11-47-13. When Colonel Lynch identified Plaintiff in photographs socializing and associating with members of a known criminal gang and individuals confirmed to be indicted for violent crimes, he was within his statutory authority to determine that Plaintiff was no longer suitable to retain his concealed-carry permit. This authority to determine "suitability" is within the discretion of Colonel Lynch and qualifies as "just cause" for revoking Plaintiff's concealed carry permit.

Plaintiff here is not challenging the constitutionality of the concealed carry statutory scheme under R.I. Gen Laws § 11-47. Plaintiff's claim is that Colonel Lynch violated his Second Amendment rights, under the U.S. and Rhode Island Constitution, by revoking his concealed carry permit. However, as described above, the State of Rhode Island granted Colonel Lynch, in his position as Chief of Police for Burrillville, the discretion to do so. This "suitability" requirement is one of the three requirements that must be met when applying for a concealed-carry permit. *See Gadomski v. Tavares*, 113 A.3d 387 (R.I. 2015). Colonel Lynch was exercising the discretion granted him by the State of Rhode Island. For this reason, and because laws

restricting an individual's right to carry a concealed weapon do not fall within Second Amendment protections, Plaintiff's Second Amendment claim, under both the U.S. and Rhode Island Constitution, must fail as a matter of law.

### B.  Count II – The Procedural Due Process claim

### 1.  Plaintiff does not have a property interest in a concealed-carry permit

In Count II of Plaintiff's complaint, he alleges that the Defendant's violated his Procedural Due Process rights under the Fifth and Fourteenth Amendment of the U.S. Constitution and Article I, Section II of the State Constitution of Rhode Island. *Plaintiff's Complaint at ¶ 32.* Specifically, Plaintiff claims that he was entitled to "pre-revocation notice of Col. Lynch's intent to revoke his permit . . . and a meaningful opportunity to be heard prior to any such revocation." *Id*. at ¶ 28.

"The test for a procedural due process violation requires the plaintiff[s] to first show, a deprivation of a protected property interest, and second, a denial of due process." *Perez -Acevedo v. Rivero-Cubano*, 520 F. 3d 26, 30 (1st Cir. 2008). If an individual is deprived of a property right, the government must afford the individual the opportunity to be heard. *Gorman v. University of Rhode Island*, 837 F.2d 7, 12-13 (1st Cir. 1988). The application of the Due Process Clause, therefore, requires this Court to engage in a two-step analysis. The Court "must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property;' if protected interests are implicated, [the court] must then decide what procedures constitute 'due process of law.'" *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). However, property interests protected by the Due Process Clause of the Fourteenth Amendment do not arise whenever a person has only 'an abstract need or desire for,' or 'unilateral expectation of,' a benefit." *Board of Regents v. Roth*, 408 U.S. 564, 577

(1972). These property interests arise from "legitimate claim(s) of entitlement . . . defined by existing rules or understandings that stem from an independent source such as state law." *Id*.

Where "state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, . . . applicants do not have a property right in such licenses protected by the Fourteenth Amendment." *Haeker v. Linder*, 2016 U.S. Dist. LEXIS 96087 *12 (D. Mont., July 22, 2016) (*quoting Erdelyi v. O'Brien*, 680 F.2d 61, 63 (9th Cir. 1982); *see also Gardner v. Baltimore Mayor and City Council*, 969 F. 2d 63, 68 (4th Cir. 1992) (laws calling for issuance of a license or permit cannot create property rights unless the state actor "lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest.").

In *Haeker*, the plaintiff was originally granted and issued a concealed-carry permit through his local sheriff, Mike Linder ("Linder"). *Haeker*, 2016 U.S. Dist. LEXIS at *1. Subsequent to being granted this permit, another individual filed a protection order against the plaintiff. *Id*. at *2-3. As a result of the protection order, Linder revoked the plaintiff's concealed carry permit. *Id*. at *3. This revocation occurred before a hearing on the protection order was scheduled. *Id*. The plaintiff filed suit against Linder, in his capacity as the local sheriff, claiming that the revocation of his concealed-carry permit violated his rights to due process under the Fourteenth Amendment. *Id*. The *Haeker* Court held that "in light of Linder's statutory authority to exercise discretion in revoking a concealed-carry permit, the Court concludes that Haeker did not have a legitimate claim of entitlement to a concealed-carry permit . . . sufficient to establish a property interest protected by the Due Process Clause." *Id*. at *12. In so holding, the Court noted that the state of Montana was a "shall issue" state, which requires the local sheriffs, such as Linder, to grant concealed-carry permits when an applicant qualifies under the statue. *Id*. at *10.

However, in granting such concealed-carry permits, Montana law granted sheriffs discretion to deny a permit based upon a determination that an "applicant may be a threat to the peace and good order of the community." *Id*. at *11. Additionally, the Court noted that Montana law provided for a revocation statute which granted the local sheriff the discretion to revoke a concealed-carry permit "if circumstances arise that would require the sheriff to refuse to grant the permittee an original license." *Id*. at **11-12. Therefore, because the local sheriff had the discretion to revoke a concealed-carry permit upon a reasonable belief that an individual was a threat to peace, this discretion under the Montana statutory scheme is "inconsistent with a concealed-carry permit holder's claim of entitlement to a property interest protected by the Fourteenth Amendment's Due Process Clause." *Id*. at *13.

In this case, similar to the statutory scheme under Montana law in *Haeker*, Rhode Island law permits the local police chief to deny an applicant for a concealed-carry permit if the police chief, in his sole discretion, determines that the applicant is not a "suitable person to be licensed." R.I. Gen Laws § 11-47-11. Further, Rhode Island permits the same police chief to revoke a concealed-carry permit at any time for "just cause." R.I. Gen Laws § 11-47-13. Under this statutory scheme, Rhode Island law granted Colonel Lynch, as the licensing authority, discretion to determine who is and who is not suitable for a concealed-carry permit. Likewise, Rhode Island granted Colonel Lynch this same discretion in revoking permits. Therefore, because Colonel Lynch had discretion to revoke a permit in such a closely-regulated field, this discretion under this statutory scheme is "inconsistent with a [plaintiff's] claim of entitlement to a property interest protected by the Fourteenth Amendment's Due Process Clause." *Haeker*, 2016 U.S. Dist. LEXIS at *13. For these reasons, Plaintiff's Procedural Due Process claims under the U.S. and Rhode Island Constitution must fail as a matter of law.

### 2.   Plaintiff does not have a liberty interest in a concealed-carry permit

In addition to asserting he has a property interest in the concealed-carry permit issued to him, Plaintiff also claims that he had a liberty interest in this same permit. *Plaintiff's Complaint at ¶ 31.* Plaintiff fails, however, to articulate what is his liberty interest. Therefore, Defendants are left to speculate as what liberty interest Plaintiff is referring.

Any liberty interest Plaintiff is asserting is subject to due process protection only when accompanied by injury to another constitutionally-protected interest. *Paul v. Davis*, 424 U.S. 693, 701 (1976). An allegation of defamation or an injury of damages to one's reputation, "even with all of the attendant emotional anguish and social stigma, does not itself state a cause of action for violation of a constitutional right; infringement of more tangible interests must be alleged as well." *Borucki v. Ryan*, 827 F.2d 836, 842-43 (1st Cir. 1987). Liberty does not include "the right to be free from actions which impose a stigma or other disability that forecloses one's freedom to take advantage of other employment opportunities." *Erdelyi*, 680 F.2d at 63.

Plaintiff fails to assert any viable constitutionally-protected interest that has been injured. Plaintiff claims that his First and Second Amendment rights were violated by Colonel Lynch's revocation of his concealed-carry permit. However, for the reasons cited in this memorandum, both Plaintiff's First and Second Amendment claims fail. Additionally, Plaintiff cannot show that the revocation of the concealed-carry permit established a stigma or other disability that has prevented the employment of Plaintiff. Plaintiff can continue in his current employment without a concealed-carry permit. Although Plaintiff may not be able to pursue his "profession in precisely the way [he] would like, [h]e has not been entirely, or even substantially, excluded." *Id*. at 63-64. Moreover, there is no stigma attached to the revocation of this permit. *Id*. For these

reasons, Plaintiff's Procedural Due Process claims under the U.S. and Rhode Island Constitution must fail as a matter of law.

### 3. There is no right to a pre-deprivation hearing prior to the revocation of a concealed-carry permit

Plaintiff also makes the claim, under his Procedural Due Process count, that he was entitled to pre-revocation notice of Colonel Lynch's intent to revoke his concealed-carry permit, and also that he was entitled to a pre-revocation hearing to be heard in order to contest his permit revocation. *Plaintiff's Complaint at ¶¶ 28-30.*

Even if Plaintiff had a property interest or liberty interest in his concealed-carry permit, the revocation of a firearms license, "particularly a license to carry a concealed, large capacity weapon, without a predeprivation hearing is justified by concerns as to public health and safety." *Hightower*, 693 F.3d at 85. In *Hightower*, the plaintiff also brought a procedural due process claim, and argued that she was entitled to a predeprivation hearing. *Id*. at 84. However, the First Circuit rejected the plaintiff's assertion that due process required a hearing take place before her license could be revoked. *Id*. It did so for two reasons. First, the Court reasoned that where protection of public health and safety is at issue, a prerevocation of a license is a permissible summary administrative action. *Id*. at 84-85 *citing Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981). The revocation of a firearms license implicates such public health and safety concerns, and therefore, revocation prior to a hearing is permissible. *Id*. at 85. *See Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010) ("[The State] clearly has a strong and compelling interest in ensuring that firearm permits are not issued to those 'lacking the essential character or temperament necessary to be entrusted with a weapon.'" (*quoting Dwyer v. Farrell*, 193 Conn. 7, 475 A.2d 257, 260 (Conn. 1984))); *Spinelli v. City of New York*, 579 F.3d 160, 170-71 (2d Cir. 2009) (holding that predeprivation process was not required to suspend gun dealer's

license where there were security lapses at the gun store, given the interest in public safety); *Hain v. DeLeo*, No. 1:08-CV-2136, 2010 U.S. Dist. LEXIS 116393, 2010 WL 4514315, at *8 (M.D. Pa. Nov. 2, 2010) (rejecting the claim that revocation of a firearms license requires a predeprivation hearing, in part because "the state interest in protecting the public safety through the enforcement of licensure requirements is compelling. . . . [A predeprivation hearing] would significantly burden the state interest in quickly removing licenses from individuals who prove to be dangerous after their license has been issued"); *Thomson v. Bd. of Firearms Permit Exam'rs*, No. NNH950369628, 1996 Conn. Super. LEXIS 70, 1996 WL 24701, at *4 (Conn. Super. Ct. Jan. 4, 1996) [**49] (holding that no predeprivation hearing need be held to revoke a pistol permit, in part because, given "the nature of weapons and their potential for inflicting harm or causing death, recognition of a right to continue to carry a weapon between the time that evidence of unsuitability arises and completion of notice and a hearing would impose a great risk to the public whose interests the government must protect"); *Rabbitt v. Leonard*, 36 Conn. Supp. 108, 413 A.2d 489, 491, 493 (Conn. Super. Ct. 1979) (holding that, while the Connecticut constitution provides a right to bear arms "which must be protected by procedural due process," predeprivation process for revoking a pistol permit is not required, in part because "[t]he summary nature of a pistol permit revocation is vital to protect the public safety. A permittee who is, in fact, unfit to carry a pistol could conceivably do a great deal of harm if given advance notice that his permit might be revoked; it could even result in the loss of human life. The risk is too great.").

The *Hightower* Court also reasoned that in circumstances where public health and safety is concerned, full predeprivation process is not required so long as "prompt post deprivation review is available for correction of administrative error." *Hightower*, 639 F.3d at 85 *quoting*

*Mackey v. Montrym,* 443 U.S. 1, 13 (1979). In *Hightower*, Massachusetts law provided that where a license was revoked, the aggrieved individual may file a petition to obtain judicial review in the district court, and then may receive further judicial review in an action of certiori. *Hightower*, 639 F.3d at 86. These procedural rights to petition the Court were held to be an appropriate prompt post deprivation review. *Id.*

Similarly, in this case, Plaintiff's claim that he was entitled to a predeprivation hearing fails for both the reasons articulated in *Hightower*. Colonel Lynch's revocation of Plaintiff's concealed-carry permit, by its very nature, implicated public health and safety concerns. Colonel Lynch's concern regarding Plaintiff's association and potential affiliation with criminal gangs warranted summary administrative action in the form a revocation of Plaintiff's concealed-carry permit. There is certainly a compelling government interest in ensuring that Plaintiff remains someone who is suitable to possess a concealed-carry permit, and therefore, revoking Plaintiff's permit prior to a hearing was both permissible and practicable.

Moreover, like Massachusetts in *Hightower*, Rhode Island has a prompt post deprivation review in the form of judicial review. If a local licensing authority determines, in his or her discretion, that an applicant or holder of a concealed-carry permit is unsuitable, the licensing authority may reject the application or revoke the permit. R.I. Gen. Law § 11-47, et. seq. Then, "if a license is refused on the ground that a person is not suitable, this determination is subject to review" by the Rhode Island Supreme Court on certiori. *Mosby v. Devine*, 851 A.2d 1031, 1048 (R.I. 2004); *see Gadomski*, 113 A.3d at 390. In this case, Colonel Lynch determined that Plaintiff was unsuitable to possess a concealed-carry permit, and provided a letter to Plaintiff articulating the reasons for this determination. As a post-deprivation measure, Plaintiff has the ability to

petition the Rhode Island Supreme Court to have this decision reviewed. This process provides Plaintiff with adequate post-deprivation review.

For these reasons, Plaintiff's Procedural Due Process claims under the U.S. and Rhode Island Constitution must fail as a matter of law.

### 4. Plaintiff did not avail himself to a post-deprivation hearing with Colonel Lynch

"In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are availed to him or her . . ." *Alvin v. Suzuki*, 227 F. 3d 107, 116 (3d Cir. 2000). Plaintiffs are not denied due process because they choose to not attend a hearing after receiving ample notice. *NLRB v. Hijos De Ricardo Vela, Inc*., 475 F.2d 58, 61 (1st Cir. 1973). A failure to attend the hearing belies a claimed deprivation of due process rights. *Rink v. Ne Educ. Intermediate Unit 19*, No. 3:14-CV-02154, 2016 U.S. Dist. LEXIS 93141, at *47 n.13 (M.D. Pa. July 18, 2016).

Here, after Plaintiff's concealed-carry permit was revoked, a meeting was scheduled for 11:00a.m. on June 13, 2018 between Plaintiff and Colonel Lynch to discuss Plaintiff's concealed-carry permit status. *Statement of Undisputed Facts at ¶ 13.* Plaintiff called Colonel Lynch on June 13, 2016 cancelling this meeting. *Id. at ¶ 15.* That same day, the Burrillville Police Department received a letter from Plaintiff's attorney requesting additional information regarding the reasons for the revocation of Plaintiff's concealed-carry permit. *Id. at ¶ 16.* This letter requested the Burrillville Police not to contact Plaintiff, and that their "client has authorized this office to proceed with an action to the Rhode Island Supreme Court. . . ." *Id.*

When Plaintiff failed to attend a post-deprivation meeting with Colonel Lynch to discuss Plaintiff's permit status, after receiving ample notice to do so, this opportunity to be heard by the licensing authority was lost due to Plaintiff's own inaction. *McAllen Hosps., L.P. v. Suehs*, 426

S.W. 3d 304, 314 (Tex. App. February 24, 2014). Plaintiff, by his own choosing, elected not to attend the June 13, 2018 meeting. Plaintiff was provided with this opportunity to be heard, but refused to avail himself. Moreover, by the contents of Plaintiff's attorney letter, Plaintiff was also aware that his post-deprivation right of review was to "proceed with an action to the Rhode Island Supreme Court." *Id.*

For these reasons, Plaintiff's Procedural Due Process claims under the U.S. and Rhode Island Constitution must fail as a matter of law.

### C. Count III – The Substantive Due Process claim

In Count III of Plaintiff's complaint, Plaintiff makes the assertion that "Defendants violated Plaintiff's rights to substantive due process secured by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section II of the Constitution of the State of Rhode Island. . . ." *Plaintiff's Complaint at ¶ 35*. These claims are anchored on the action by Colonel Lynch in revoking Plaintiff's concealed-carry permit.

"Even though the due process clause refers only to procedural safeguards, it is settled that it also 'contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Bibiloni Del Valle v. Puerto Rico*, 661 F. Supp. 2d 155, 183 (D.P.R. 2009), *quoting Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "In its substantive aspect, due process safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). "The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression or abuse of government power

that *shocks the conscience*. . . ." *Medeiros v. Vincent*, 431 F.3d 25, 33 (1st Cir. 2005) (emphasis added). The courts have consistently held that substantive due process claims are limited to extreme cases and "the threshold for establishing the requisite 'abuse of government power' is a high one indeed." *Licari v. Ferruzzi*, 22 F.3d 344, 350 (1st Cir. 1994) *citing Nestor Colon-Medina & Sucrs., Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992)). "A viable substantive due process claim requires proof that the state action was in and of itself . . . egregiously unacceptable, outrageous, or conscience-shocking." *Licari*, 22 F.3d at 347 (1st Cir. 1994); *see also Nestor Colon-Medina*, 964 F.2d at 45 (substantive due process mechanism limited to "truly horrendous situations"). "[T]he question of whether the challenged conduct shocks the contemporary conscience is a threshold matter that must be resolved before a constitutional right to be free from such conduct can be recognized" *DePoutot*, 424 F.3d at 118.

First, this Court must determine whether Defendant's conduct shocks the conscience. Its only after this Court answers this threshold question does it examine what, if any, constitutional right may have been violated by the conscience-shocking conduct and identify the level of protection afforded to that right by the due process clause. *Id*. Deprivations resulting from negligent acts or omissions on the part of state officers are not actionable under due process provisions. *Ramos-Pinero v. Puerto Rico*, 453 F.3d 48, 53 (1st Cir. 2006). "Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach." *Nestor Colon-Medina*, 964 F.2d at 45.

The Plaintiff's allegations do not fit under the substantive due process rubric. Colonel Lynch has the statutory authority to revoke, at any time, a concealed carry permit that he grants. R.I. Gen. Laws § 11-47-13. If Colonel Lynch is equipped with such discretion to revoke these permits, the exercise of that discretion for articulated reasons cannot amount to conduct that is

"truly horrendous." Additionally, an act by a municipal body to revoke or issue permits does "not ordinarily implicate substantive due process." *Licari*, 22 F.3d at 349. Similarly, the act of a government body does not "transgress constitutional due process requirements merely by making decisions 'for erroneous reasons' or by making 'demands which arguably exceed its authority under the relevant state statutes.'" *Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir. 1990). The record is absent any evidence that the decision by Colonel Lynch to revoke Plaintiff's permit was motivated by any "egregiously unacceptable, outrageous, or conscious-shocking" conduct. *Licari*, 22 F.3d at 347. Accordingly, the claim for a substantive due process violation must be dismissed as a matter of law.

### D.  Count IV – The Conspiracy to Interfere with Civil Rights claim

To state a claim under § 1985(3), a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *See Griffin* v. *Breckenridge*, 403 U.S. 88 (1971). In *Griffin*, the Supreme Court placed a gloss on these four elements, effectively adding a fifth requirement. It construed the statute's references to "equal protection" and "equal privileges and immunities" under the laws to signify that a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* at 102. The record is absent any admissible evidence which shows Plaintiff is a member of some protected class and is asserting some class-based claim. Additionally, the record is void of any reference to any racial

discrimination or some other "invidiously discriminatory animus" on the part of these Defendants. For these reasons, Count IV must be dismissed as a matter of law.

### E.  Count V – The First Amendment claim

Plaintiff's First Amendment claim is premised on his right to freedom of association. *Plaintiff's Complaint at ¶¶ 38-41*. Plaintiff claims that by revoking Plaintiff's concealed-carry permit, it impermissibly burdened Plaintiff's constitutional right to freedom of association. *Id. at ¶ 41.*

The U.S. Supreme Court recognizes "freedom of association" in two distinct senses: (1) the right "to enter into and maintain certain intimate human relationships," such as marriage, close family relationships, and child-rearing; and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). The second category of "expressive association" is meant to protect an individual's right "to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622.

It is unclear what category Plaintiff is asserting in this case with respect to his First Amendment claim. The government, whether it's the Town of Burrillville or Colonel Lynch, have not prevented or inhibited Plaintiff from associating with any organization or individual. The only action taken by any of the Defendants in this case is the revocation of Plaintiff's concealed-carry permit. This action is not in any way related to or preventing Plaintiff from associating with any organization or individual. Moreover, the gangs or groups that Plaintiff is claiming to have interest in associating with are not the type of organization protected by the Freedom of Association Clause. The Constitution does not recognize the "generalized right of

'social association. . . .'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Moreover, "[t]he constitutionally protected right of association . . . has never been expanded to include purely social gatherings." *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 12 (1st Cir. 2011). "Rather, it is contingent on the presence of underlying individual rights of expression protected by the First Amendment." *Id*. More specifically, associating with a "motorcycle gang neither implicates the right of intimate association nor the right of expressive association protected by the First Amendment." *Strong v. City of Eugene*, No. 6:14-cv-01709-AA, 2016 U.S. Dist. LEXIS 69126, at *14 (D. Or. May 25, 2016) *citing City of Dallas v. Stanglin*, 490 U.S. 19, 24-25, (1989); *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, (1984); *Conti v. City of Fremont*, 919 F.2d 1385, 1388-89 (9th Cir. 1990).

Plaintiff does not specifically state what organization or group he desires to be associating with or how the Defendants are preventing that association. Whether Plaintiff is claiming his right to associate in the context of social gatherings or his desire to associate with a motorcycle gang, neither of these interests fall under the rubric of the Freedom of Association Clause; neither of these interests involve the "pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends" contemplated by the First Amendment. *Roberts*, 468 at 622. For these reasons, Plaintiff's First Amendment claim must fail as a matter of law.

### F.  Count VI – The Takings claim

The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use, without just compensation. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). Plaintiff alleges that the Defendants violated the Takings Clause by revoking his concealed-carry permit. *Plaintiff's Complaint at ¶ 43*. While there are circumstances where

licenses can constitute a property interest for purposes of due process, "property as used in [the Takings] clause is defined much more narrowly than in the due process clauses." *Pittman v. Chi. Bd. Of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995); *see Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cnty.*, 57 F.3d 505, 513 (7th Cir. 1995) ("The Due Process Clause ... recognizes a wider range of interests as property than does the Takings Clause."). Licenses or permits granted by a public body do not constitute property under the Taking Clause. *See Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1197 (10th Cir. 1999) ("[T]he fact that a grazing permit is not 'property' under the Takings Clause does not prevent the same permit (or its terms and conditions) from constituting 'property' under the Fifth Amendment Due Process Clause.").

Where the government "has not explicitly created a property right in a permit, we ordinarily look to the degree to which the [government] has restrained its own discretion relating to the permit." *Id*. at 1197 *citing Jacobs, Vinsconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir. 1991) ("When analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given the decisionmaker . . . .); *see also Norton v. Village of Corrales*, 103 F.3d 928, 931 (10th Cir. 1996) ("In the entitlement analysis nearly all courts focus on whether there is discretion in the defendants to deny a zoning or other application.").

Here, as articulated earlier, Plaintiff's claim to a concealed carry permit does not amount to a property interest. Thus, because "property as used in [the Takings] clause is defined much more narrowly than in the due process clauses," Plaintiff does not have a valid Takings claim. *Pittman*, 64 F.3d at 1104. Moreover, the State of Rhode Island has clearly maintained discretion in local licensing authorities such as Colonel Lynch in revoking concealed-carry permits. R.I.

Gen. Laws § 11-47-13. The State's statutory scheme does not create an entitlement in any of these permits. The statutes allow the local licensing authorities, at its discretion, to revoke any permit it grants. Based on the aforementioned precedent addressing the characterization of licenses issued by a municipality, Plaintiff's concealed-carry permit cannot amount to property under a Takings analysis. For these reasons, Count VI of Plaintiff's complaint must fail as a matter of law. As Article I, Section 16 of the Rhode Island Constitution mirrors the Takings Clause under the Fifth Amendment, Plaintiffs' state law claim must fail as well.

## V. <u>CONCLUSION</u>

For the reasons set forth herein, Defendants respectfully request that this Honorable Court grant Defendant's motion for summary judgment on all counts and dismiss Plaintiff's Complaint as against these parties.

Defendants,
By their attorney,

*/s/ Ryan Stys*
Ryan Stys      #8094
DESISTO LAW LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
ryan@desistolaw.com

<u>CERTIFICATION OF SERVICE</u>

I hereby certify, that on this 29 day of April 2020, I electronically served this document

through the electronic filing system upon the following parties:

Matthew L. Fabisch, Esq.
mlfabisch@yahoo.com
fabisch@fabischlaw.com

The document electronically served is available for viewing and/or downloading from the

Rhode Island Judiciary's Electronic Filing System.

*/s/        Ryan Stys                   ____*